UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JERRY LENEZ BANGMON, | § | |
| TDCJ # 01568309, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:14-CV-0370 |
| | § | |
| DAMON ALEXANDER, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jerry Lenez Bangmon, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), brought this civil rights suit in November 2014, complaining of an alleged use of force incident on November 16, 2012. Plaintiff also complains that he was denied adequate medical care. Four defendants remain in this lawsuit: Correctional Officer Damon Alexander; Correctional Officer Sergio Buentello; Dr. Edgar Hulipas; and Physician's Assistant ("PA") Terry Speer.[1]

On January 12, 2018, the Attorney General submitted a *Martinez* report (Dkt. 40),[2] which the Court construed as a summary judgment motion by Hulipas and Speer (Dkt.

---

[1] The Court's docket originally listed nine Defendants. Four Defendants (Willie M. Ratliff, Greta K. Bennett, Beverly A. White, and Aquisha Guidry) were dismissed on summary judgment because Plaintiff had failed to exhaust his administrative remedies (Dkt. 44). The remaining party, Emily Shortridge, is not actually a defendant because Plaintiff brings no claims against her. Rather, Plaintiff identifies Shortridge as a "witness" who "helped Plaintiff to receive the proper medical care" (Dkt. 1, at 5).

[2] An administrative report submitted by state officials pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (a "*Martinez* report"), is a tool to assist courts in making a determination of frivolity under 28 U.S.C. § 1915. *See Norton v. Dimazana*, 122 F.3d 286, 292-

45). Plaintiff has filed a response (Dkt. 55) and the motion is ripe for consideration. Defendant Alexander has appeared and filed an answer entering a general denial and asserting qualified immunity (Dkt. 49). Defendant Buentello has been served but has not appeared.

Having reviewed the evidence submitted, the parties' briefing, and the applicable law, the Court concludes that the motion for summary judgment should be **GRANTED** and that all of Plaintiff's claims must be **DISMISSED** for the reasons that follow.

## I.  BACKGROUND

Plaintiff Bangmon complains in this lawsuit that Defendant Alexander used force against him at TDCJ's Darrington Unit on November 16, 2012, causing pain in Plaintiff's lower back and leg. He also alleges that Defendant Buentello witnessed the use of force and did not intervene to prevent it; that Dr. Hulipas, the medical director at the Darrington Unit, failed to provide adequate medical care in a two-year period after the alleged use of force; and that PA Speer failed to provide adequate medical care at the Darrington Unit on March 5, 2014.

According to the relevant medical records, which are attached to the *Martinez* report, Plaintiff received treatment for back and leg pain in the months before the alleged use of force. In September 2012, Plaintiff was treated at least three times in the Darrington Unit's clinic (Dkt. 40-2, at 57-69) (documenting medical appointments on September 5, 12, and 28, 2012). The medical personnel treating Plaintiff included

---

93 (5th Cir. 1997); *see also Cay v. Estelle*, 789 F.2d 318, 323 & n.4 (5th Cir. 1986) (discussing the utility of a *Martinez* report).

Defendants Hulipas and Speer. At that time, Plaintiff already was using crutches and a cane, and was receiving pain medication. The records reflect that Plaintiff "ambulate[d] well with crutches" and was able to "hop on[] and off of [the] exam table with ease" (*id*. at 57). On October 18, 2012, Plaintiff again was treated in the clinic for back pain and was continued on pain medication (*id*. at 56).

Around November 11, 2012, just before the alleged use of force, Plaintiff requested a clinic appointment, stating that "as of 11-11-12 my KOP [keep-on-person medication] for ibuprofen 800mg has expired" and that he had "no pain pills" (*id*. at 202). Medical staff scheduled him for an appointment in clinic (*id*.).

On November 16, 2012, Plaintiff encountered Officer Alexander in a Darrington Unit hallway. According to Plaintiff's memorandum, Alexander was on duty in the law library at approximately 6:00 p.m. and, through the library window, saw Plaintiff "in the middle of the hallway on crutches" (Dkt. 2, at 5). Plaintiff explains that he was coming from the dining hall towards his cell, and was waiting for the "turnkey officer" to open the entry gate for his housing area (*id*.). He alleges that Alexander left the law library and approached Plaintiff in the hallway in a "very hostile and aggressive" manner, "harassing the Plaintiff about walking in the middle of the hallway" (*id*.).[3] According to Plaintiff, Captain Greta Bennett previously had instructed Plaintiff to walk in the middle of the hallway "for the duration of time that Plaintiff was on crutches" because she once had "bumped into the Plaintiff with a door as she was exiting her office" (Dkt. 2, at 5).

---

[3]    Plaintiff further alleges that this conduct by Alexander breached TDCJ's employee conduct guidelines, which he attaches to his memorandum (Dkt. 2-5, at 1-5).

Plaintiff states that he explained Bennett's instructions to Alexander and that Alexander cursed at him (*id*. at 6).

Plaintiff alleges that Alexander then asked Plaintiff for his identification card, which Alexander dropped on the floor. After Plaintiff picked it up, he states that Alexander was verbally abusive towards him, and then grabbed him and "threw him into the wall":

> [Alexander] grabbed the Plaintiff['s] jacket by the right arm shoulder area with his left hand and with his right hand he grabbed the Plaintiff's right arm while we were both standing in the middle of the hallway, the Defendant intentionally, maliciously, and sadistically snatched the Plaintiff ten to eleven feet across the Darrington Unit hallway and threw him into the wall facing the law library.

(*id*. at 6; *see* Dkt. 1, at 4). Plaintiff claims that Alexander's actions "caused the Plaintiff's spine to twist" and that he felt a "pop" in "something inside of [his] lower back spine area" (Dkt. 2, at 6). He also alleges that the "left side of his face, chest and stomach made contact with the wall facing the law library" and that "when the Plaintiff made contact with the wall he began to feel extreme pain immediately in his lower back area and left leg" (*id*.). He alleges that Alexander's actions caused him "serious bodily injury" and "led to the Plaintiff having a major surgery to wit Plaintiff had to have a body part removed" (Dkt. 1, at 4). Plaintiff does not identify the removed body part.

Plaintiff alleges that Defendant Buentello, another correctional officer, witnessed the incident but failed to intervene or to report the incident to his supervisor, and therefore is liable as a bystander (*id*. at 3; Dkt. 2, at 7).

TDCJ has not produced a Use of Force report regarding the November 16 incident. The custodian of the TDCJ's Use of Force Records has provided an affidavit stating that, "after a diligent search, no Use of Force Report(s) to include videos/photographs has been located in the name of Jerry Bangmon TDCJ # 1568309 Cause Number 3:14-370 pertaining to a use of force incident that occurred on November 16, 2012" (Dkt. 39-2) (emphasis deleted). The affidavit does not state whether a report was written and later destroyed pursuant to TDCJ's document retention policy, or whether a report on the incident never existed.

On the day of the incident, November 16, Plaintiff filed a grievance against Alexander (Dkt. 2-1, at 17-18) (Grievance #2013046456).[4] TDCJ's response, dated January 4, 2013, stated that Plaintiff's complaint had been forwarded to TDCJ's Office of the Inspector General ("OIG"), that Alexander denied the allegations of assault, and that the OIG had determined that "[t]here was insufficient evidence to open an investigation" (*id*. at 18). The Step Two grievance response, dated February 8, 2013, again stated that the evidence was insufficient to open an OIG investigation (*id*. at 19-20).[5]

On November 19, 2012, Plaintiff requested that Darrington officials review the videotape from the hallway and law library. Plaintiff states that he made a request to

---

[4] TDCJ's records custodian states that TDCJ does not have grievance records for Grievance #2013046456 (Dkt. 39-1). *See* Dkt. 40, at 5 (TDCJ's grievances are subject to a three-year retention policy). However, Plaintiff has produced the records.

[5] Plaintiff corroborates this information in his memorandum, stating, "OIG said that they checked with medical at unit infirmary for assault on day of incident, that there is no evidence to support an investigation" (Dkt. 2, at 12). Plaintiff also states that OIG agents informed him that "they checked with the unit medical dept. and that the Plaintiff did not come to medical until days later" (*id*.).

Jerry Sanchez, "the Darrington Unit building major," which led to review of video footage that same day by several Darrington officials (Dkt. 2, at 10). By Plaintiff's account, the officers who reviewed the video told Plaintiff that they could see hostility from Alexander towards Plaintiff, but that the recording did not capture any use of force:

> [The officers] went in the [major's] office for quite some time. . . . A while later [the officers] all came out of the . . . . office together from reviewing the video footage and [Captain] Bennett was speaking for all of them saying to Plaintiff . . . *we don't see no assault*. At that time the Plaintiff asked "What did they see["] and they all said that *they didn't see no assault*. The Plaintiff said "are you sure you're looking at the video footage from Friday November 16, 2012, at 5:30-6:00 pm.["] [Captain] Bennett said she rolled the footage back past 5:30 or before 5:30-6:00 and *still didn't see no assault* . . . . Lt. Valero said he seen defendant Alexander go inside the law library and come out and hand the Plaintiff his I.D. card back pointing his finger in Plaintiff['s] face. Lt. Valero said he seen Defendant Alexander when he picked up the Plaintiff['s] I.D. card and handed it back and started talking to Plaintiff in a hostile mann[e]r. The Plaintiff told all three officials that if they seen all of that then they had to see the use of force assault. *They denied seeing it.*

(*id.*) (emphasis added). Plaintiff states that he then began to suspect that the officers were conspiring to "cover up" for Alexander (*id.*).

Plaintiff provides two statements from inmates who identify themselves as eyewitnesses to the incident and partially corroborate Plaintiff's version of the events. One statement, from Alexander Packett, is dated May 15, 2013, and states that he witnessed Alexander "come out of the law library in a hostile manner," and that Alexander then "grabbed [Plaintiff] and drug him across the hallway holding him up to the wall" while cursing and threatening Plaintiff (Dkt. 2-2, at 2). A second statement, from Bobby Degrate, is dated May 7, 2014, approximately eighteen months after the incident, and states that Alexander "snatch[ed]" Plaintiff, who was on crutches, "across

the hall and thr[e]w him against the wall in front of the law library" (Dkt. 2-2, at 4).

Neither statement attests to any injury suffered by Plaintiff.[6]

On November 20, 2012, several days after the alleged use of force, Plaintiff had an appointment at the clinic, which had been scheduled based on his November 11 request for an ibuprofen refill. The records from the appointment contain no mention of the alleged incident on November 16 or any resulting injuries. In fact, Dr. Hulipas' records reflect "no acute findings" (Dkt. 40-2, at 54). The records also contain notations that Plaintiff was ambulating well and did not appear to need much support from his crutches:

> [Offender] requests ibuprofen renewal, [complains of] pinched nerve left leg, losing strength in left arm, noticed that this [offender] uses crutches on ambulation, swings his upper body and able to balance his weight during ambulation, [offender] is reported by nurses to be ambulating in the hallway without difficulty with little support from crutches[.]

(*id.*). Dr. Hulipas renewed the ibuprofen prescription as Plaintiff had requested (*id.*). Plaintiff alleges that he reported the use of force to Dr. Hulipas at the appointment, but that Hulipas "failed to respond" (Dkt. 2, at 13).[7]

On May 8, 2013, at an appointment to manage Plaintiff's blood pressure, Dr. Hulipas discontinued Plaintiff's crutches because they were not medically indicated (Dkt. 40-2, at 36-39; *see* Dkt. 2, at 13). Several days later, Plaintiff filed a grievance against Dr. Hulipas. Based on the medical records, TDCJ denied his grievance at both steps of

---

[6]     Despite Plaintiff's statement that the two witnesses "stopped in their tracks" at the time they witnessed Alexander's "assault" (Dkt. 2, at 7), the Court notes that the statements were actually prepared significantly after the events, and after the administrative grievance procedure had concluded.

[7]     Plaintiff cites to no "sick call" slips or other documentation in the record indicating that he requested treatment for any injuries resulting from the November 16 incident and the Court, in its review of the record, has found no such documentation.

the process, stating that Dr. Hulipas had seen no indication for crutches, that Plaintiff had been advised to keep his orthopedic appointments, and that Plaintiff was scheduled to begin physical therapy (Dkt. 2-6, at 2-5).

On September 11, 2013, Plaintiff was evaluated at Hospital Galveston's orthopedic clinic. The specialist at the clinic recommended medication, a back brace, a cane for ambulation, and physical therapy (Dkt. 2-4). Plaintiff states that he received physical therapy from November 2013 through January 2014 (Dkt. 2, at 15).

On February 27, 2014, Plaintiff saw Dr. Hulipas in the Darrington Unit clinic and apparently requested a cane pass. Dr. Hulipas denied the request, stating that it was not medically indicated. Plaintiff alleges that Dr. Hulipas also denied him a referral to a "qualified back specialist" (*id.*). The medical records from the February 27 appointment contain Dr. Hulipas' notes, which indicate that Plaintiff was brought to the infirmary without any assistive device and that he refused to lay or sit on the examination table for a physical assessment (Dkt. 40-1, at 10-11). Dr. Hulipas stated that a previous MRI had revealed "no significant spinal stenosis," that Plaintiff had been discharged from physical therapy at the Estelle Unit, and that there was "no indication for walker/cane" (Dkt. 40-1, at 10). He recommended range of motion exercises (*id.*).

On March 5, 2014, Plaintiff again was treated in the Darrington Unit clinic. PA Speer recorded that Plaintiff had a "steady gait with a noted apparent exaggerated limp which worsened as [the patient] entered [the] office" and an "[a]pparent exaggerated difficulty upon entering and exiting the exam table" (*id.* at 12-13). The records from the appointment reflect that Plaintiff's walking cane had been discontinued by the physical

therapy unit before Plaintiff's return to Darrington, and that Plaintiff was counseled to continue with his range of motion exercises as recommended by physical therapy providers (*id.* at 13). Plaintiff alleges that Speer displayed "ill will" and "reckless disregard" towards him because Speer denied him a walking device (Dkt. 2, at 13). He filed a grievance against Speer, which was denied based on the medical records (Dkt. 40-1, at 3-6). Several months later, on June 6, 2014, Plaintiff received a property pass for a wooden cane and back brace from the Brace and Limb Clinic at the Estelle Unit (Dkt. 2-5, at 17).

On July 31, 2014, Plaintiff had elective spinal surgery at Hospital Galveston (Dkt. 40-4, at 3-95; Dkt. 40-3, at 122-23). The medical records state that the procedure was for lower back pain "that radiates down the back of left leg and into bottom of left foot into all toes," and that Plaintiff's symptoms had appeared in "mid 2012" (Dkt. 40-4, at 7). Although Plaintiff appears to allege that the surgery was performed because of injuries related to the alleged November 16, 2012 use of force,[8] he does not direct the Court's attention to any evidence in the record supporting his assertion. After surgery, Plaintiff apparently did not return for an initial follow-up appointment, but received further post-operative treatment in September 2014 (Dkt. 40-3, at 122-23).

Plaintiff appears to complain that at some point after his surgery, apparently in September and October 2014, Dr. Hulipas failed to provide him adequate medical care.

---

[8]      *See* Complaint (Dkt. 1), at 4 (alleging that the November 16, 2012, incident caused 'serious bodily injury" and led to Plaintiff having "major surgery" and "a body part removed"); *see also* Plaintiff's Memorandum (Dkt. 2), at 16 (stating that Plaintiff had "major surgery for the serious bodily injury and wanton infliction of pain" by Alexander, which surgery was performed on July 31, 2014).

He alleges that Dr. Hulipas "not once checked on the Plaintiff" after the July 31 surgery and "refuse[d] to follow specialist orders" for specialized medical shoes and stockings (Dkt. 2, at 16). Records from the University of Texas Medical Branch ("UTMB") show that Plaintiff received medical treatment multiple times at UTMB in September and October, including follow-up care from neurosurgery (Dkt. 40-3, at 90-141).

## II.  STANDARDS OF REVIEW

### A.  The PLRA and *Pro Se* Pleadings

Because the plaintiff is an inmate proceeding *in forma pauperis*, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). A claim is frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. . . . A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

### B.      Summary Judgment—Rule 56

The Court has construed the *Martinez* report filed by the Attorney General's Office as a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit

under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*.

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although Plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to

construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary judgment evidence") (internal citation and quotation marks omitted).

## III.   DISCUSSION

### A.   Official Immunity

UTMB and TDCJ are state agencies.   Tex. Educ. Code § 65.01 *et seq*.; Tex. Gov't Code § 493.001 *et seq*.   A claim against an official employed by TDCJ or UTMB in his or her official capacity is a claim against the agency, and thus a claim against the State of Texas.   *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008).   Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity.   *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015); *Moore v. La. Bd. of Elem. and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014).   Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting Section 1983.   *NiGen*, 804 F.3d at 394.

To the extent Plaintiff sues Defendants in their official capacity as state employees, Defendants are entitled to immunity under the Eleventh Amendment from claims for monetary damages.   Accordingly, Defendants are entitled to summary judgment on this issue.

### B. Qualified Immunity

Defendants have invoked qualified immunity, and Plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (internal quotation marks and citation omitted); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt*, 822 F.3d at 181 (internal citation and quotation marks omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (internal citations and quotation marks omitted). A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017).

### C. Eighth Amendment Claims against Hulipas and Speer

Plaintiff alleges that Dr. Hulipas and PA Speer violated his Eighth Amendment rights. Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional

violation.  See *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).   Because Plaintiff was, at all relevant times, a convicted felon in state prison, his claims regarding denial of adequate medical care are governed by the Eighth Amendment prohibition against "cruel and unusual" conditions of confinement.   *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see Helling v. McKinney*, 509 U.S. 25, 33 (1993) (the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'").

To prevail on his Eighth Amendment claim, Plaintiff must demonstrate that Defendants exhibited "deliberate indifference" to his "serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal citations and quotation marks omitted); *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   The Eighth Amendment standard has both an objective and subjective component.   *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   First, the prisoner must show "objective exposure to a substantial risk of serious harm." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006).   Second, he must show that the defendant acted, or failed to act, with deliberate indifference to the risk.   *Id*. at 345-46.   Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).   It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015).   "The mere delay of medical care can also constitute an Eighth Amendment violation but only 'if there has been deliberate indifference [that] results in

substantial harm.'" *Easter*, 467 F.3d at 463 (quoting *Mendoza v. Lynaugh*, 989 F.2d 191. 193 (5th Cir. 1993)).

### 1. Dr. Hulipas

Liberally construed, Plaintiff's allegations relevant to Dr. Hulipas, the medical director at the Darrington Unit, are as follows: on November 20, 2012, Hulipas "failed to respond" to Plaintiff's report regarding the November 16 incident (Dkt. 2, at 13); on May 8, 2013, Hulipas discontinued his crutches (*id*.); in September through November 2013, Hulipas delayed his physical therapy (*id*. at 15); on February 27, 2014, Hulipas denied him a cane pass and a neurosurgery referral (*id*.); and, in July 2014, Hulipas failed to check on him after his surgery and "refuse[d] to follow specialist orders" for "slip grip shoes/medical boots" and "snug fit" stockings (*id*. at 16).

The medical records summarized above provide no support for Plaintiff's claim that Hulipas was "deliberately indifferent" to his "serious medical needs." Rather, the records show that Plaintiff received regular medical attention from Hulipas and multiple other providers in the 2012-2014 period. Throughout that time, Hulipas and other professionals provided Plaintiff with care as medically indicated at the time of treatment, including pain medication, crutches, a cane, physical therapy, x-rays, MRI exams, and surgery. These voluminous records in themselves weigh heavily against a finding of deliberate indifference. *See Varnardo v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991); *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of a deliberate indifference claim where medical records documented that the prisoner was not denied medical attention). Plaintiff has made no showing that Dr. Hulipas acted or failed to act

with "deliberate indifference" to a "substantial risk of serious harm" to Plaintiff, as required for an Eighth Amendment claim. *See Gobert*, 463 F.3d at 345-46.[9]

Plaintiff appears to take issue with Dr. Hulipas' particular medical decisions regarding his treatment. For example, Plaintiff protests Dr. Hulipas' decisions not to authorize crutches and a cane even though Plaintiff had used the devices previously. However, Dr. Hulipas' decisions were supported by his clinical observations at the time of treatment, as reflected in the medical records (Dkt. 40-2, at 36-39; Dkt. 40-1, at 10-11), and were within his medical judgment. An inmate's mere disagreement with medical treatment does not constitute deliberate indifference. *Estelle*, 429 U.S. at 107 (explaining that the decision whether to provide a particular type of treatment "is a classic example of a matter for medical judgment"); *Gibbs*, 254 F.3d at 549.

The record supplies no competent summary judgment evidence supporting Plaintiff's Eighth Amendment claim. Plaintiff's conclusory allegations that Dr. Hulipas exhibited "deliberate indifference" are not enough to defeat summary judgment. *See Outley*, 840 F.3d at 217 & n.9 (*pro se* plaintiffs must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court); *Jones*, 678 F.3d at 348 (non-movant cannot avoid summary judgment by presenting conclusory allegations, improbable inferences, unsubstantiated assertions, or legalistic

---

[9]   Even if Plaintiff could establish medical malpractice or negligence by Dr. Hulipas, such a showing would be insufficient to establish deliberate indifference or a violation of the Eighth Amendment. *See Hinojosa*, 807 F.3d at 665; *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001).

argumentation).  Summary judgment therefore is granted for Dr. Hulipas on Plaintiff's Eighth Amendment claim.

### 2.    Speer

Plaintiff's only allegation regarding PA Speer is that, on March 5, 2014, Speer "displayed ill will" and "reckless disregard" when he denied Plaintiff "a walking cane or some kind of walking aid device for helping the Plaintiff ambulate" (Dkt. 2, at 13).   The records before the Court clearly document that Plaintiff's cane was not medically indicated in February and March 2014, because Plaintiff had completed physical therapy and the providers there had discontinued his cane (Dkt. 40-1, at 10-13).  As stated above regarding Dr. Hulipas, the record contains no competent evidence supporting a finding of "deliberate indifference" by Speer.  *See Hinojosa*, 807 F.3d at 665; *Domino*, 239 F.3d at 756. To the contrary, the record demonstrates that the decision to discontinue Plaintiff's cane was supported by medical judgments by Speer, Dr. Hulipas, and the physical therapy providers.   To the extent Plaintiff disagrees with that medical judgment, such disagreement does not suffice to show deliberate indifference.  *See Estelle*, 429 U.S. at 107; *Rogers*, 709 F.3d at 410.  Summary judgment is granted for Speer on Plaintiff's Eighth Amendment claim.

### D.    Eighth Amendment Claims against Alexander and Buentello

Plaintiff alleges that Alexander used excessive force against him on November 16, 2012, in violation of his Eighth Amendment rights.   He also alleges that Buentello witnessed the incident and failed to intervene.  The Court examines whether these claims

are appropriately dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B) ("the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous").

When a prisoner claims that a prison official's use of force violated the Eighth Amendment's ban on cruel and unusual punishments, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). "[Not] every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. at 9. The Eighth Amendment prohibition "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9-10 (internal citations and quotation marks omitted). *Hudson*, applying *Whitley*, identified five factors relevant to the Court's analysis: (1) the extent of injury suffered by the inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and, (5) any efforts made to temper the severity of a forceful response. *Id*. at 7; *Cowart v. Erwin*, 837 F.3d 444, 452-53 (5th Cir. 2016). Regarding injury to the inmate, the Court stated, "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Hudson*, 503 U.S. at 7.[10] "Injury

---

[10] "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Id*. (quoting *Whitley*, 475 U.S. at 321).

and force . . . are only imperfectly correlated, and it is the latter that ultimately counts."

*Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

### 1. Alexander

Plaintiff alleges that Alexander treated him roughly on November 16, 2012, when he "snatched" Plaintiff across a hallway and threw him into a wall. The records produced by TDCJ in its *Martinez* report contain no evidence that a use of force actually occurred. In fact, the record refutes Plaintiff's account. The grievance records provided by Plaintiff demonstrate that the OIG looked into the November 16 incident and determined that "there was insufficient evidence to open an investigation" (Dkt. 2-1, at 17-20). Plaintiff states that Darrington Unit officers reviewed the videotapes three days after the incident at Plaintiff's request, and informed Plaintiff that Alexander was "hostile" towards him but did not use force against him (Dkt. 2, at 10). Plaintiff did not request immediate medical attention.

Moreover, even if the Court were to assume that a use of force occurred, and that Alexander's alleged actions rose above a *de minimis* level of force, the record refutes Plaintiff's bare assertion that he was injured as a result of the incident. The medical records in the *Martinez* report contain no evidence of that Plaintiff suffered any injury on November 16. The records from November 20 contain no mention of the alleged use of force four days earlier, and in fact reflect "no acute findings" and state that Plaintiff was ambulating without difficulty (Dkt. 40-2, at 54). The records also reflect that Plaintiff's back and leg pain began—and was treated at the Darrington Unit—well before November 16, 2012 (*id.* at 56-69). Although Plaintiff asserts that his July 2014 surgery, in which an

unidentified "body part" was "removed," was necessitated by the alleged use of force in November 2012, he provides no supporting facts. His bare assertions find no support in the medical record regarding his surgery (Dkt. 40-4, at 3-95). The absence of serious injury is relevant to the Court's consideration of an excessive force claim. *See Hudson*, 503 U.S. at 7. "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 38 (internal quotation marks and citations omitted).

In this case, given the administrative and medical records contradicting Plaintiff's claims, his conclusory allegations of force and injury are insufficient to state a non-frivolous claim for relief. *See* 28 U.S.C. § 1915(e)(2)(B); *Iqbal*, 556 U.S. at 678; *Wilburn v. Shane*, 193 F.3d 517 (5th Cir. 1999) (upholding summary judgment for defendants because "based on the objective factors of [the plaintiff's] medical records, which show no evidence of injuries consistent with his allegations of excessive force, [the plaintiff's] allegations are implausible"). His claim lacks "an arguable basis in fact" because "after providing the plaintiff the opportunity to present additional facts . . . the facts alleged are clearly baseless." *See Rogers*, 709 F.3d at 407. For essentially the same reasons, his conclusory allegations also do not defeat the qualified immunity protection invoked by Alexander. *See Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) ("Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are all insufficient to overcome [qualified] immunity") (citation and internal quotation marks omitted).

Plaintiff's Eighth Amendment claim against Alexander is dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B).  *See Samford,* 562 F.3d at 678; *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

### 2. Buentello

Plaintiff's only allegation against Officer Buentello is that he was a bystander to Alexander's alleged use of force and failed to intervene (Dkt. 1, at 3; Dkt. 2, at 7).  For the reasons stated above regarding Alexander, Plaintiff's Eighth Amendment claim against Buentello lacks an arguable basis in fact and will be dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B); *Rogers*, 709 F.3d at 407.

## IV. CONCLUSION

For the reasons stated above the Court **ORDERS** that:

1.  Summary judgment is **GRANTED** for Defendants Hulipas and Speer, and Plaintiff's claims against them are **DISMISSED with prejudice**.

2.  Plaintiff's claims against Defendants Alexander and Buentello are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B).

3.  All other pending motions are **DENIED as moot**.

A separate final judgment will issue.

SIGNED at Galveston, Texas, this 5th day of September, 2018.

George C. Hanks Jr.
United States District Judge